United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Steel Parts Corp.,  Case No. 06-52972-R
         Debtor.  Chapter 11
_____/

Steel Parts Corp.,
         Plaintiff,

v.  Adv. No. 07-4321

Resilience Acquisition, Inc.,
         Defendant.
_____/

Opinion Regarding Cross-Motions for Summary Judgment

This matter is before the Court on cross-motions for summary judgment. The Court conducted a hearing on November 26, 2007, and took the matter under advisement.

I.

On September 15, 2006, Steel Parts Corp. filed for chapter 11 relief. On that date, Steel Parts entered into an agreement with Resilience Acquisition, Inc., whereby Resilience would purchase substantially all of the assets of Steel Parts (the "APA"). The APA was approved by the Court on November 17, 2006. The sale closed on November 30, 2006.

The APA provided, in part, that Resilience would purchase:

> all machinery, equipment, spare parts, computers, tools, vehicles, furniture, furnishings, leasehold improvements, goods of every type and description and other tangible personal property wherever located owned by Seller and used in the Business (the "**Owned Equipment**").

*See* APA at ¶ 2.1(b).

On March 30, 2007, Steel Parts filed a complaint against Resilience asserting that certain industrial presses in Resilience's possession were not included in the sale and should be returned to Steel Parts or that Resilience should be required to pay $400,000 for them.

In the complaint, Steel Parts states that prepetition it entered into a manufacturing and purchase agreement with Trelleborg YSH, Inc., whereby it agreed to purchase the presses at issue from Trelleborg and use the presses in the manufacturing of parts for Trelleborg. As of the petition date, Steel Parts owed Trelleborg $400,000 for the purchase of the presses and Trelleborg owed Steel Parts $1,075,000 for parts manufactured and delivered to Trelleborg.

On October 12, 2006, Steel Parts, Trelleborg and Wells Fargo entered into an accommodation agreement pursuant to which Trelleborg agreed to pay Steel Parts all undisputed accounts receivable, Steel Parts would pay Trelleborg all outstanding amounts (including the $400,000 due on the presses) and Trelleborg would transfer title to the presses to Steel Parts.

Steel Parts alleges in the complaint that, prior to closing, it informed Resilience that the presses were not included in the APA and requested a $400,000 increase in the purchase price or permission to remove the presses. However, Resilience refused.

Count I of the complaint alleges breach of contract for failure to pay for the presses. Count II seeks turnover. Count III is for unjust enrichment. Count IV alleges conversion.

II.

Resilience asserts that the plain language of the APA provides that the sale was to include all of the machinery and equipment owned by Steel Parts and used in its business. Resilience argues that because the presses were owned by Steel Parts as of the closing date, they were included in the sale.

Resilience contends that the APA is a fully integrated agreement and that both parties understood that any assets not specifically excluded were included in the sale. Resilience asserts that the parol evidence rule prevents Steel Parts from introducing any evidence to vary the terms of the contract because it is clear and unambiguous.

Conversely, Steel Parts argues that when the parties signed the APA both parties knew that the presses were excluded. Steel Parts contends that this is evidenced by communications it had with Resilience on November 14, 2006, wherein it informed Resilience that the presses were not included and that Resilience would have to pay an additional sum of $400,000 in order to purchase them. Steel Parts contends that it sent a follow-up letter to that effect to Resilience on November 22, 2006. Steel Parts argues that because Resilience was fully aware that it did not intend to transfer the presses, Resilience is bound by its interpretation of the contract.

Steel Parts provided the affidavit of Richard Fagan, its liquidation trustee, in support of its response and request for summary judgment.

### III.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party to set forth specific facts showing a triable issue." *Janda v. Riley-Meggs Indus., Inc.*, 764 F.

Supp. 1223, 1227 (E.D. Mich. 1991). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

The Court concludes that because the presses were not included in the APA as negotiated, they were not part of the sale. When the parties initially negotiated the APA, Steel Parts did not own the presses. There is no dispute they were not included in the category of "Owned Equipment" at that time. Indeed, the presses were specifically excluded. The APA provided, at ¶ 2.3(b), for the exclusion of equipment leases as set forth on Schedule 2.3(b). The referenced schedule, prepared on September 22, 2006, listed two presses leased from Trelleborg YSH as excluded. Although Steel Parts did own the presses at the time of the closing, the parties never renegotiated the APA to include the presses and there was no additional money paid by Resilience to compensate Steel Parts for the presses. Although there were three amendments to the APA prior to closing, none of the amendments addressed the presses.

Accordingly, partial summary judgment is granted in favor of Steel Parts on Count II (turnover) and Count III (unjust enrichment). Count I (breach of contract) and Count IV (conversion) are dismissed for lack of evidence. It appears that a genuine issue remains as to Steel Parts' damages relating to the value of the presses. Accordingly, that issue will be addressed at trial.

Not for Publication

**Signed on December 26, 2007**

                /s/ Steven Rhodes
                **Steven Rhodes**
                **Chief Bankruptcy Judge**